1
2
3
4
5
6
      UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
           AT SEATTLE
7
8
GINO PAUL VALDIVIA ,

9
            Plaintiff,

v.

10
WASHINGTON STATE
11
DEPARTMENT OF CORRECTIONS,
et al.,
12
           Defendants.
13

CASE NO. C20-1429-RSM-SKV

REPORT AND RECOMMENDATION

14
## INTRODUCTION

15
     Plaintiff, an employee of Washington State Department of Corrections (DOC), applied

16
and was not selected for a different position within the agency.  Proceeding pro se, Plaintiff filed

17
the current lawsuit naming the DOC, Assistant Secretary, Health Services Division, Daniel S.

18
Johnson, and Secretary Stephen Sinclair as Defendants.  Dkt. 1.  He alleges the failure to hire

19
and promote him was retaliation for his past protected activity and violated Title VII of the Civil

20
Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.  *Id.*

21
     DOC now moves for dismissal of Plaintiff's claim on summary judgment.  Dkt. 26.

22
Plaintiff opposes the motion, Dkt. 29, and Defendant moves to strike portions of Plaintiff's

23
response, Dkt. 33.  The Court, having reviewed the parties' briefing, documents submitted in

24

1  support and opposition, and the remainder of the record, concludes Defendant's Motion to Strike

2  should be GRANTED in part and DENIED in part, Defendant's Motion for Summary judgment

3  should be GRANTED, and this matter should be DISMISSED with prejudice.[1]

4  BACKGROUND

5       Plaintiff began his DOC employment in June 2010 as a Sex Offender Treatment

6  Specialist, a position in which he remains employed to this day.  Dkt. 27, Ex. A at 13:11-15.  In

7  the current lawsuit, Plaintiff addresses his failed attempt to secure a position as a Correction

8  Specialist 4 (CS 4), also known as a Community Corrections Specialist, and alleges retaliation

9  for his engagement in past protected activity.  *See* Dkt. 1 at 7-9; Dkt. 27, Ex. A at 21:10-22:20,

10  23:2-16, 61:23-62:2.  Plaintiff, in particular, challenges actions and decisions by Minna Kokko

11  (previously Swartz), the CS 4 supervisor and hiring manager, including her initial decision to

12  deny Plaintiff an interview and her later selection of a different candidate.  *See* Dkt. 1 at 7-9.

13  After receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission

14  (EEOC), Plaintiff timely filed this lawsuit in September 2020.  Dkt. 1.

15  A.    <u>Past Protected Activity</u>

16      1.    <u>Discrimination and Retaliation Complaints</u>:

17       Plaintiff filed three prior EEOC complaints.  Dkt. 27, Ex. A at 60:19-23.  A 2015

18  complaint alleged he was targeted for investigations due to his national origin (Hispanic) and

19  was determined unfounded.  *Id*. at 60:25-61:5, 62:3-8, 22-25, 65:4-9.  A second complaint, filed

---

[1] Plaintiff responded to Defendant's Reply and Motion to Strike.  Dkt. 34.  This Court's local rules allow for the filing of a surreply by a party seeking to "strike material contained in or attached to a reply brief" and "strictly limited to addressing the request to strike," and clarify:  "Extraneous argument or a surreply filed for any other reason will not be considered."  LCR 7(g)(2); *Gauthier v. Twin City Fire Insurance Company*, C14-0693-RSM, 2015 WL 12030097, *1 (W.D. Wash. July 15, 2015) (noting "the local rules do not provide a mechanism to submit additional argument").  Because Plaintiff's filing consists of extraneous argument in response to the reply, it does not constitute a permissible surreply and is not considered herein.

that same year, alleged retaliation due to his first complaint. *Id*. at 61:6-14. He filed a federal

lawsuit and the case settled, with Plaintiff receiving costs and DOC not admitting fault. *Id*. at

65:10-66:12. He filed his third EEOC complaint following a 2018 DOC Internal Discrimination

Complaint (IDC) alleging retaliation in his non-selection for a position open only to internal

candidates. *Id*. at 61:15-22, 65:22-67:24. The complaint ended in mediation. *Id*. at 68:4-5. In

that process, DOC supervisor Cathi Harris provided feedback to Plaintiff about being timely,

punctual, and better organized, and trainings were selected to help him advance his career,

including attendance at a conference in Georgia. *Id*. at 68:14-70:16.

     2.    <u>Other Alleged Protected Activity</u>:

     Prior to the current claim, Plaintiff had not alleged discrimination or retaliation by Ms.

Kokko in either an IDC or EEOC complaint. *Id*. at 70:18-25, 72:3-5. However, he alleges he

previously "sent an email . . . directly to [Ms.] Kokko in which he overtly opposed

discrimination by citing DOC's policy 810.005[.]" Dkt. 1 at 8, 57.

     The incident at issue began with an April 25, 2019 email from Plaintiff informing other

employees of the opportunity to contribute leave to a co-worker experiencing medical issues. *Id*.

at 32-38; Dkt. 27, Ex. A at 85:1-7; Dkt. 29 at 20. Ms. Kokko responded that same day:

> While I appreciate the sentiment behind asking colleagues to donate leave,
> sending an email, as you did this morning, to the entire team is extremely
> inappropriate and may leave staff feeling obligated and/or pressured to donate.
> Please do not send emails of this nature to my team in the future. There are
> appropriate channels to request staff to donate leave and this is not one of them.

Dkt. 1 at 33; Dkt. 29 at 19. Both Ms. Harris and Corey McNally similarly responded to Plaintiff.

Dkt. 1 at 35-38; Dkt. 29 at 21, 23.

     Plaintiff filed an IDC dated April 25, 2019 and alleging discrimination by Ms. Harris

where she, Ms. Kokko, and Mr. McNally deemed his email inappropriate, but had not similarly

1    chastised or rebuked Jonathan Hartz, a Caucasian employee who had one day prior sent an email

2    soliciting donations for gifts.  Dkt. 1 at 30-32; Dkt. 29 at 16-17.  Plaintiff stated:  "Ms. Harris'

3    behaviors conflict and deviate from DOC policy 810.005[,]" the DOC's Diversity and Inclusion

4    policy.  Dkt. 1 at 31; Dkt. 27, Ex. A at 87:12-88:6; and Dkt. 29 at 16-17.   He also, that same day,

5    sent an email to Ms. Kokko stating:

6           Yesterday Mr. Jon Hartz sent an email to staff asking for money to help pitch in
            for Administrative Professionals Day[.]  I'm not sure you are aware of operations
7           here at MCC-TRU-SOTAP.  It is noted that you, Corey McNally and Cathi Harris
            referred to my email as "inappropriate" where Mr. Hartz did not receive negative
8           feedback for the same behavior.  Thank you for sharing your perspective, as it
            helps in gaining information and practices necessary to uphold DOC policy
9           810.005.

10   Dkt. 1 at 57.

11          Plaintiff identifies his email to Ms. Kokko as an act "opposing discrimination" and

12   protected activity.  Dkt. 27, Ex. A at 85:7-11, 85:25-86:22.  He believes he was not selected for

13   the CS 4 position based on retaliation for this and his other protected activities.  *Id*. at 86:17-22,

14   89:14-25.   He acknowledged he had not received prior approval to send out the email regarding

15   leave donation, did not know the relevant policy, later realized Mr. Hartz had received prior

16   approval, and that it was possible other individuals who sent out similar emails had either

17   received approval or reprimands.  *Id*. at 85:17-22, 86:23-87:11, 88:21-89:13.

18   B.     Current Claim

19          1.     Application and Position:

20          On June 10, 2019, Plaintiff submitted an on-line application for the CS 4 position,

21   including a standard-form application, resume, and cover letter.  Dkt. 27, Ex. A at 23:2-25:1;

22   Dkt. 30, Ex. D.  He identified his undergraduate degree as a major of Liberal Arts with Area of

23

24

Concentration in History and a minor in religion/philosophy, and his graduate degree as a Master of Public Administration. Dkt. 30, Ex. D at 1.

The CS 4 job entails duties "very similar" to Plaintiff's job as a Sex Offender Treatment Specialist. Dkt. 27, Ex. C at 7:12-8:16. However, while the latter works with individuals in a DOC facility, the former works with individuals released from prison and receiving treatment in the community. *Id.* at 8:4-16. Plaintiff expected the position would provide a lower salary, but more flexible work hours that would allow him to care for his child until 4:30 p.m. every day and work a full day in the evenings. *Id.*, Ex. A at 133:7-134:6. According to Ms. Kokko, CS 4 hours vary, some CS 4s conduct group meetings in the evening, and none work on the weekends. *Id.*, Ex. B at 20:19-21:10. She attests that, while the schedules are flexible, "it would be impossible for a [CS 4] to work exclusively in the evenings," and "unrealistic" that an individual "could perform full-time childcare while performing job duties." Dkt. 28, Ex. C., ¶11.

        2.     <u>Initial Denial of Interview and IDCs</u>:

On June 24, 2019, Ms. Kokko denied Plaintiff an interview because he did not have a "social science degree," a qualifying criteria for the job. Dkt. 27, Ex. B at 16:8-15 and Ex. C at 16:3-9; Dkt. 30, Ex. D at 5 (describing a degree with a "major study in a social science or behavioral science"). Plaintiff emailed Ms. Harris, who oversees the Sex Offender Treatment and Assessment Program (SOTAP) and was the Appointing Authority for the opening. Dkt. 27, Ex. A at 28:19-22, Ex. C at 7:1-11, 7:24-8:1, 17:4-8. Ms. Harris did not immediately respond because she was on vacation. *Id.*, Ex. C at 16:12-16.

On June 26, 2019, Plaintiff filed two IDCs challenging the denial of an interview. *Id.*, Ex. A at 50:1-14. One alleged discrimination by Ms. Kokko based on age (42), gender (male), and national original (Hispanic), and the other alleged retaliation. *Id.* at 50:15-22, 51:3-12; Dkt.

29, ¶9.  Plaintiff had never heard Ms. Kokko say anything negative about someone of his age, gender, or national origin.  Dkt. 27, Ex. A at 50:23-51:12.  While he did not know who had been selected to interview, he knew that, in the past, a male employee had not been selected for a different opening filled by a younger female.  *Id*. 52:10-53:5 (stating:  "That's the only evidence I had to go off of.")   He also believed that, because of his prior protected activity, he was "perceived as too much of a liability to be hired, and people don't want to deal with me[.]"  *Id*. at 51:23-52:1.

After she returned from vacation, Ms. Harris spoke with Ms. Kokko.  *Id*., Ex. C at 16:12-17:13.  Ms. Harris found the denial of an interview "very problematic" because Plaintiff held a position with very similar job duties.  *Id*.  She chose to override the education criteria and directed Ms. Kokko to grant Plaintiff an interview.  *Id*. and Ex. B at 17:1-6.  She did not discuss Plaintiff's prior protected activity with Ms. Kokko.  *Id*., Ex. C at 25:9-13.

3.    Interviews and Reference Checks:

On July 1, 2019, a panel including Ms. Kokko, Amanda DeBleeker, and Mr. Hartz interviewed Plaintiff.  *Id.*, Ex. A at 32:11-14.  This same panel interviewed other applicants, including Nathan Ku, the individual ultimately selected for the position.  Dkt. 28, ¶¶ 4-5.  Plaintiff notes Mr. Hartz "was previously the subject of an investigation in which he received a letter of corrective action for sending an email to [Plaintiff] which appeared to be a death threat", and provides a December 2012 email from Mr. Hartz.  Dkt. 1 at 7-8 & 56.  *See also* Dkt. 32, ¶3 & Ex. B (deposition testimony in which Mr. Hartz acknowledged corrective action taken in response to an email he sent).

The panel took turns asking a total of fifteen questions and assigned a score of one to five to each answer, with five as the best score.  Dkt. 28, ¶¶4, 6; Dkt. 30, Ex. G.  Ms. Kokko averaged

the scores, including a 56.3 for Plaintiff and a 53 for Mr. Ku.  Dkt. 28, ¶6; Dkt. 30, Ex. G. Plaintiff left the interview confidant he would get the job.  Dkt. 27, Ex. A at 46:2-18.

Ms. Kokko subsequently conducted reference checks.  Dkt. 28, ¶7.  Both Ms. Kokko and Ms. Harris deemed the reference checks one of the most important factors in the hiring decision. *Id*.; Dkt. 27, Ex. C at 26:2-14.  The reference forms contained a number of questions and a space to rate the applicant on a scale of one to ten in areas of "resourcefulness," "follow through," and "integrity/ trustworthiness."  Dkt. 30, Ex. E.

All three of Mr. Ku's references rated him "10" in each category.  *Id*., Ex. F.  Plaintiff's supervisor, Joan Howe, rated Plaintiff "7" in resourcefulness and follow through and "8" in integrity/trustworthiness.  *Id*., Ex. E.  One of his co-workers rated him "8" in resourcefulness and follow through, and "10" in integrity/trustworthiness, while another co-worker rated him "7" in resourcefulness, "8" in follow through, and "9" in integrity/ trustworthiness.  *Id*.  Ms. Kokko called Ms. Howe to discuss her responses, Dkt. 28, ¶7, and reported that Ms. Howe indicated Plaintiff may struggle with the autonomy of working independently, Dkt. 27, Ex. A at 120:13-18.

4.    Selection of Mr. Ku:

Ms. Kokko attests she found Mr. Ku a stronger candidate than Plaintiff because his "references were markedly better, he had advanced relevant education and coursework, and his work history demonstrated success in a similar field."  Dkt. 28, ¶8.  She recommended Ms. Harris hire Mr. Ku.  *Id*.  She maintains she was unaware of Plaintiff's IDCs, EEOC complaints, and federal litigation.  Dkt. 27, Ex. B at 16:16-25; Dkt. 28, ¶9.  She attests she based her decision on the application materials, interview, and references, and did not consider any of Plaintiff's past actions.  Dkt. 28, ¶10.  Ms. Harris approved the decision to hire Mr. Ku.  Dkt. 27, Ex. C at 26:15-17.

On July 25, 2019, Ms. Kokko announced the hiring of Mr. Ku via email.  Dkt. 27, Ex. A at 73:11-16.  While she previously sent hiring announcements to everyone in SOTAP, she did not include Sex Offender Treatment Specialists at Monroe Correctional Complex, including Plaintiff, in the email.  *Id*. at 73:16-24 and Ex. B at 30:1-4.  Another DOC employee forwarded Plaintiff the email.  *Id*., Ex. A at 74:2-6.  Plaintiff identifies his omission as additional evidence of retaliation, *id*. at 74:11-21, while Ms. Harris testified as to the absence of any standard practice for providing notice to non-selected employees, Dkt. 27, Ex. C at 17:20-24.

     5.    <u>Conclusion of IDC Investigation and EEOC Complaint</u>:

The DOC concluded its investigation into Plaintiff's IDCs in October 2019, finding no policy violation or discrimination.  Dkt. 27, Ex. A at 58:13-17.  Plaintiff thereafter filed his EEOC complaint alleging his non-selection was retaliatory.  Dkt. 30, Ex. B.  He stated he was not given a reason for the decision and that the selected candidate "appears to be less qualified for the position."  *Id*.

The DOC responded to the complaint with a denial and supporting documents.  *Id*., Exs. C-I.  Notes by Ms. Kokko about the hiring decision refer to Mr. Ku's education and coursework, work experience in a related field, and references as reasons for his selection.  *Id*., Ex. H at 1 (listing classes in individual, family, and marriage counseling, small groups, and leadership, and a vocational degree as a Chemical Dependency Professional (which requires 30 hours of coursework in treatment methods, developmental psychology, individual and group counseling, relapse prevention, and psychopathology), and "11 years of experience working with at-risk youth with offenses that include sexual assault.")  The notes relating to Plaintiff point to his lack of relevant degrees or coursework and the responses of his references.  *Id*. at 2-3 (stating that,

while both his undergraduate and graduate degrees are technically considered social science, he "did not list any classes in mental health, counseling, human development, clinical skills, etc.")

Both the DOC response and Ms. Kokko's notes incorrectly state Plaintiff was notified of his non-selection on June 24, 2019, the day he was told he would not be interviewed.  *Id.*, Ex. C at 3 and Ex. H at 3.  Attachments show Plaintiff had responded to a June 24th email from Ms. Kokko's assistant, informing him other applicants' skills and abilities were a closer match for the position, with an email stating:

> I just checked my cover letter for this application.  I didn't include my settlement agreement with DOC (attached).  I will be going to Georgia to attend an ATSA conference.  Would that make me a stronger candidate for this position?  If not, could you please let me know when this position has been filled.

*Id*.  Ms. Kokko included this information in her notes addressing Plaintiff's non-selection, adding:  "At this point, the decision had already been made to hire another applicant, however, when I saw an attached settlement agreement, I had reason to believe that some type of disciplinary event had occurred that resulted in a settlement agreement and professional development plan."  *Id.*, Ex. H at 3.  Other attachments show Ms. Kokko's assistant forwarded her the above-described email from Plaintiff on February 13, 2020.  *Id*.

DISCUSSION

A.    <u>Motion to Strike</u>

Defendant identifies portions of Plaintiff's response to the motion for summary judgment as unsupported by citation to the record and lacking any foundation.  Dkt. 33 at 2 (citing Dkt. 29, ¶¶3, 5B, 5C, 6-7, 10-11, 13-15, 17A, 18-19, and select portions of ¶¶ 4, 5A, 12 and 17B).  Defendant also deems some of Plaintiff's exhibits unauthenticated and inadmissible hearsay.  *Id.* at 3 (citing Dkt. 29, Exs. 4-5, 8, 10-11).  Defendant moves to strike this evidence as not properly

considered on summary judgment.  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment. Authentication is a 'condition precedent to admissibility,' . . .[and] unauthenticated documents cannot be considered in a motion for summary judgment.") (internal and other citations omitted).

On summary judgment, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  A party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  An affidavit or declaration offered to support or oppose a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

To the extent Plaintiff's Response contains assertions of fact unsupported by citation to the record or through an affidavit or declaration, Defendant's motion to strike is properly granted and the assertions are not considered herein.  The Court otherwise, with the exception discussed below, declines to address the authenticity or admissibility of the challenged exhibits upon finding their consideration unnecessary for resolution of Defendant's dispositive motion.

Defendant asserts that Exhibit 4 to Plaintiff's response "appears to be an unrelated DOC [IDC] with numerous emails attached." Dkt. 33 (citing Dkt. 29 at 15-24).  The exhibit consists of the April 25, 2019 emails and IDC Plaintiff identifies as past protected activities leading to the alleged retaliation.  Defendant, in seeking summary judgment, cites to one of the emails

contained in this exhibit and to deposition testimony addressing that email.  *See* Dkt. 26 at 10,

14.  Exhibit 4 is not, as such, reasonably described as "unrelated."

Nor would it be appropriate to strike this exhibit.  Under Federal Rule of Evidence 901,

authentication of an exhibit is satisfied by "evidence sufficient to support a finding that the item

is what the proponent claims it is." Fed. R. Evid. 901(a).  "While a document authenticated

through personal knowledge must be attached to an affidavit and the affiant must be a competent

witness who wrote the document, signed it, used it, or saw others do so, a proper foundation need

not be established through personal knowledge but can rest on any manner permitted by Federal

Rule of Evidence 901(b) or 902."  *Wineland v. Air & Liquid Sys. Corp.*, 523 F. Supp. 3d 1245,

___ n.2 (W.D. Wash. 2021) (cleaned up) (quoting *Orr*, 285 F.3d at 773-74 n.8 (quoting Fed. R.

Evid. 901(b)(1))).  Under Rule 901(b)(4), documents can be authenticated by the "appearance,

content, substance, internal patterns, or other distinctive characteristics of the item, taken

together with all of the circumstances."  Fed. R. Evid. 901(b)(4).  The Court also has a "duty to

ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to

ignorance of technical procedure requirements."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d

696, 699 (9th Cir. 1990).  *See also Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (courts

treat pro se litigants with "great leniency" in evaluating their compliance with the technical rules

of civil procedure).

Defendant does not identify anything about the April 25, 2019 IDC – contained on a

DOC form signed and dated by Plaintiff on that date – or the related email chain raising a

question as to authenticity.  Defendant also quotes one of the emails in its own motion and

provides and relies on deposition testimony consistent with the content of the remainder of the

emails contained in the exhibit.  The appearance, content, and other characteristics of the

documents in Exhibit 4 are sufficient to support a finding of authenticity, *see, e.g., Las Vegas Sands*, 632 F.3d at 533-34, and any other challenge as to admissibility is no more than conclusory.  For these reasons, Defendant's motion to strike should be denied as to Exhibit 4 and the Court herein considers this evidence in offering a recommendation on summary judgment.

B.      Motion for Summary Judgment

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  It can carry that burden by producing affirmative evidence negating an essential element of the nonmovant's case or by establishing the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 585.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A mere "scintilla of evidence" does not

suffice to defeat summary judgment.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221

(9th Cir. 1995).  Nor can the nonmoving party "defeat summary judgment with allegations in the

complaint, or with unsupported conjecture or conclusory statements."  *Hernandez v. Spacelabs*

*Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

    In conducting the Rule 56 summary judgment evaluation, "the court does not make

credibility determinations or weigh conflicting evidence."  *Soremekun*, 509 F.3d at 984.  The

Court must, instead, draw all reasonable inferences in favor of the nonmoving party. *Id.* and

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

    1.    <u>Retaliation Standard</u>:

    Section 704 of Title VII prohibits retaliation against an employee for opposing "any

practice made an unlawful employment practice by [Title VII], or because [the employee] has

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding,

or hearing under [Title VII]."  42 U.S.C. § 2000e–3.  Under Title VII, discrimination or

retaliation must be a "but for" cause of the person's disparate treatment.  *Bostock v. Clayton Cty.,*

*Georgia*, __ U.S. __, 140 S. Ct. 1731, 1739 (2020);  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570

U.S. 338, 362 (2013).  This form of causation "is established whenever a particular outcome

would not have happened 'but for' the purported cause."  *Bostock*, 140 S. Ct. 1739.

    Where the evidence is indirect, the Court analyses a retaliation claim under the burden-

shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004).  Plaintiff must first establish

a prima facie case of retaliation, showing:  (1) involvement in a protected activity; (2) an adverse

employment action; and (3) a causal link between those two events.  *Porter v. California Dep't*

*of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005) (citation omitted).  The degree of proof necessary to establish a prima facie case on summary judgment "'is minimal and does not even need to rise to the level of a preponderance of the evidence.'"  *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994)).

If Plaintiff sets forth a prima facia case, the burden shifts to the employer to articulate a legitimate nonretaliatory reason for the adverse action.  *Porter*, 419 F.3d at 894.  The burden then shifts back to the Plaintiff, who bears the ultimate burden of submitting evidence indicating the employer's  proffered reason is merely a pretext for a retaliatory motive.  *Id.*  "Only then does the case proceed beyond the summary judgment stage."  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

2.   Prima Facie Case:

a.   Protected activity:

There is no dispute that Plaintiff's 2018 and earlier IDC and EEOC complaints constitute protected activity.  *See, e.g., Ray v. Henderson*, 217 F.32d 1234, 1240 n.3 (9th Cir. 2000) ("[F]iling a complaint with the EEOC is a protected activity.")  However, Defendant did not acknowledge Plaintiff's April 25, 2019 IDC in its motion, subsequently moved to strike the exhibit containing that document, and argues Plaintiff's email to Ms. Kokko that same day does not constitute protected activity.

"An employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013).  The employment practice need not "actually be unlawful; . . . [a]n erroneous belief that an employer engaged in an unlawful employment practice is *reasonable*, and thus actionable. . . , if premised

1   on a mistake made in good faith." *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994) (internal

2   citations omitted; emphasis in original). "A good-faith mistake may be one of fact or of law."

3   *Id*. Also, an informal complaint to a supervisor constitutes protected activity. *Ray*, 217 F.3d at

4   1240 n.3 (citation omitted).

5          Defendant accurately depicts the content of Plaintiff's April 25, 2019 email to Ms. Kokko

6   – stating her perspective "helps in gaining information and practices necessary to uphold DOC

7   policy 810.005" – as vague. Dkt. 1 at 57. However, it remains that Plaintiff perceived he had

8   been treated differently than a Caucasian employee and reacted with an email contrasting his

9   treatment with that co-worker and referencing the DOC's Diversity and Inclusion policy, and by

10  filing an IDC alleging violation of that policy. Dkt. 1 at 57 (noting that his email was deemed

11  "'inappropriate'" while another employee "did not receive negative feedback for the same

12  behavior."); Dkt. 29 at 16 (IDC mentioning Ms. Kokko, but specifically alleging: "Ms. Harris'

13  behaviors conflict and deviate from DOC policy 810.005.") Viewing the evidence and all

14  inferences from the evidence favorably to Plaintiff, the email and IDC are reasonably construed

15  as involvement in protected activity. *Cf. Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411-12

16  (9th Cir. 1987) (finding evidence insufficient to show engagement in a protected activity where

17  plaintiff opposed a policy change for personal, not discriminatory reasons).

18                 b.    Adverse employment action:

19         An adverse employment action is one that a reasonable employee would find materially

20  adverse, "which in this context means it well might have 'dissuaded a reasonable worker from

21  making or supporting a charge of discrimination.'" *Burlington Northern & Sante Fe Ry. Co. v.*

22  *White*, 548 U.S. 53, 57 (2006) (hereinafter *BNSF*). As stated by the Ninth Circuit, "an action is

23

24

1   cognizable as an adverse employment action if it is reasonably likely to deter employees from

2   engaging in protected activity." *Ray*, 217 F.3d at 1243.

3          Adverse employment actions include "a significant change in employment status, such as

4   hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

5   decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S.

6   742, 761 (1998).  While "[n]ot every employment decision amounts to an adverse employment

7   action[,]" *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996) (citing

8   cases), "retaliation claims may be brought against a much broader range of employer conduct

9   than substantive claims of discrimination." *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005

10  (9th Cir. 2018).   The Ninth Circuit takes an expansive view on what constitutes an adverse

11  employment action. *Ray*, 217 F.3d at 1240-43.  Adverse action may include, for example,

12  "dissemination of a negative employment reference, issuance of an undeserved negative

13  performance review and refusal to consider for promotion[,]" *Brooks*, 229 F.3d at 928, as well

14  as lateral transfers, transfers of duties, and transfers to jobs of the same pay and status, *Ray*, 217

15  F.3d at 1240-43 (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987); *St. John v.*

16  *Employment Dev. Dep't*, 642 F.2d 273, 274 (9th Cir. 1981)).  *Cf. Nidds v. Schindler Elevator*

17  *Corp.*, 113 F.3d 912, 915, 919 & n.3 (9th Cir. 1996) (finding, with no further discussion, a

18  transfer was not an adverse employment action); *Steiner v. Showboat Operating Co.*, 25 F.3d

19  1459, 1465 n. 6 (9th Cir. 1994) (finding a transfer from swing shift to day shift "just barely-if at

20  all-characterizable as [an] 'adverse' employment action" where the plaintiff was not demoted,

21  put in a worse job, or given any additional responsibilities, and at first "even claimed to enjoy the

22  day shift.")

23

24

1    Ultimately, a plaintiff must show a reasonable employee would have found the

2  challenged action materially adverse. *BNSF*, 548 U.S. at 68.  "At the summary judgment stage,

3  the Court need only determine whether Plaintiff has presented substantial evidence for the jury to

4  find that Defendant's action would have dissuaded a reasonable worker from making or

5  supporting a charge of unlawful conduct by Defendant." *Edman v. Kindred Nursing Centers*

6  *West, L.L.C.*, C14-1280-BJR, 2016 WL 6836884, at *7 (W.D. Wash. Nov. 21, 2016) (citing

7  *BNSF*, 548 U.S. at 57).  *See also Annenberg v. Clark Cty. School Dist.*, No. 19-16031, 2020 WL

8  3397748, at *2 (9th Cir. June 19, 2020) ("'[S]omething done by an employer is an adverse

9  employment action for purposes of a retaliation claim—even if it does not materially alter a term

10  or condition of employment—as long as it would deter a reasonable employee from engaging in

11  the protected activity.'") (quoting *Ray*, 217 F.3d at 1242-43).

12    Defendant denies Plaintiff suffered an adverse employment action, asserting the job for

13  which he was not selected carried no tangible benefit.  Specifically, Defendant denies the CS 4

14  job was a promotion, depicts it as virtually identical to the position Plaintiff continues to hold,

15  notes Plaintiff's concession his salary would have decreased, and refutes his perception he could

16  have performed the job in the evening and provided full-time childcare during the day.  *See* Dkt.

17  27, Exs. A-C, and Dkt. 28, ¶11.  Plaintiff responds that he would not have sought the position if

18  he did not perceive an advantage or opportunity to care for his family and advance his career.

19  He points to Ms. Kokko's testimony acknowledging a group conducted in the evening, Dkt. 27,

20  Ex. B at 21:2-7, and argues his ability to gain experience in a different position would better his

21  chances for promotion and transfer within the DOC.

22    The fact the CS 4 job entailed similar duties for a lower salary argues against a

23  determination that Plaintiff's non-selection qualifies as an adverse employment action.  Plaintiff,

24

1  however, identifies the more flexible work hours and his desire to gain different work experience

2  as the basis for his application and the adverse nature of his non-selection.  Even if his

3  expectations for work hours were not realistic, it is undisputed the CS 4 job provided the

4  possibility for some evening hours and, consequently, the ability to provide some childcare

5  during the day.  Moreover, in arguing Plaintiff lacked sufficient qualifications for the position,

6  Defendant concedes differences between the jobs and lends credence to Plaintiff's argument his

7  non-selection deprived him of the opportunity to gain work experience and possibly advance his

8  career.  Viewed as such, the Court finds a sufficient showing on summary judgment of an

9  adverse employment action.

10         c.       Causal link:

11         To establish the requisite causal connection between his protected activities and alleged

12  adverse employment actions, Plaintiff must "present evidence sufficient to raise the inference

13  that [his] protected activity was the likely reason for the adverse action."  *Cohen v. Fred Meyer,*

14  *Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (citations omitted).  He must demonstrate the offending

15  actor had actual knowledge of the protected activity or "suspected" he engaged in a protected

16  activity.  *Hernandez*, 343 F.3d at 1113 (citation omitted).  *See also Raad v. Fairbanks N. Star*

17  *Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (plaintiff "must make some showing

18  sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had

19  engaged in protected activity.")

20         Causation "may be inferred from circumstantial evidence, such as the employer's

21  knowledge that the plaintiff engaged in protected activities and the proximity in time between the

22  protected action and the allegedly retaliatory employment decision."  *Yartzoff*, 809 F.2d at 1376.

23  However, if relying solely on temporal proximity between protected activities and adverse

24

employment actions to establish causation, the proximity must be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation omitted).

Defendant asserts the absence of a causal link between Plaintiff's past protected activity and his non-selection, pointing to deposition testimony and the fact Ms. Kokko was not involved in past mediations or accused of discrimination in a prior IDC or EEOC complaint.  Plaintiff maintains the evidence shows both Ms. Kokko and Ms. Harris were aware of his past protected activities before his non-selection, including activity less than two months before his application.

As Defendant observes, Ms. Kokko testified she was unaware of Plaintiff's past protected activities, Dkt. 27, Ex. B at 16:16-25, and Ms. Harris testified Plaintiff's prior complaints were not discussed during the hiring process, *id.*, Ex. C at 25:10-13.  It is also true that, in testifying as to Ms. Kokko's awareness of his past protected activities, Plaintiff stated she "appeared scared and stiff[]" during the interview.  *Id.*, Ex. A at 24:16-22  ("Her affect demonstrated that she was uncomfortable with me being present at that interview.")[2]

However, Plaintiff did not rely solely on his perception of Ms. Kokko in the interview. He went on to describe his April 25, 2019 email and its citation to the DOC Diversity and Inclusion policy as a past protected activity and "a contributing factor to not getting hired for the CS 4 position." *Id.* at 85:1-89:25.  Plaintiff also observes that, while testifying she had been mistaken about timing, Ms. Kokko's own notes on his non-selection reflect she was aware he had previously entered into a settlement agreement.  Dkt. 30, Ex. H at 3 (stating in relation to June 24, 2019 email Plaintiff sent to Ms. Kokko's assistant: "At this point, the decision had already been made to hire another applicant, however, when I saw an attached settlement

---

[2] Defendant did not provide all of the evidence cited to in its motion, including, as relevant here, Plaintiff's testimony that he did not known if Ms. Kokko knew of his protected activities. *See* Dkt. 26 at 16 (citing Dkt. 27, Ex. A at 84:14-18) and Dkt. 27 (omitting pages 82-84).

agreement, I had reason to believe that some type of disciplinary event had occurred that resulted in a settlement agreement and professional development plan.")   Further, while only specifically accusing Ms. Harris of discrimination, the April 2019 IDC stated that Ms. Kokko had engaged in the very same conduct.  Dkt. 1 at 30-32; Dkt. 29 at 16-17.

Defendant argues that, had Ms. Kokko actually made a hiring decision June 24th, as she mistakenly indicated in her notes, she would not have interviewed Plaintiff on July 1st or conducted reference checks.  Dkt. 33 at 5.  That is, "even inferring" Ms. Kokko "knew of Plaintiff's protected activities on June 24, the undisputed timeline shows that Plaintiff was still considered for the position when he was interviewed on July 1." *Id*. at 5-6.  Yet, Defendant also concedes and the evidence shows that Plaintiff was afforded an interview only *after* he complained and Ms. Harris intervened.  *See* Dkt. 27, Ex. A at 28:19-22, Ex. B at 17:1-6, Ex. C at 7:1-8:1, 16:12-17:13.  Plaintiff also, two days after the interview denial, filed IDCs alleging discrimination and retaliation.  *Id*., Ex. A at 50:1-51:12; Dkt. 29, ¶9.  The mere fact Ms. Kokko interviewed Plaintiff and conducted reference checks does not undermine Plaintiff's contention she was aware of and considered his past protected activity.

Plaintiff, at the least, raises questions of fact as to whether Ms. Kokko was aware of his past protected activity.  Considered as a whole, and viewed in the light most favorable to Plaintiff, the Court finds sufficient evidence to satisfy the prima facia burden on causation.

3.    Reasons for Non-Selection:

With satisfaction of the prima facie case, the burden shifts to Defendant to articulate a legitimate, nonretaliatory reason for its employment decision.  This burden is one of production, not persuasion.  *Chuang*, 225 F.3d at 1123-24.  Defendant here identifies Plaintiff's poor references and Mr. Ku's perfect references and better qualifications as the reasons for Plaintiff's

non-selection.  As explained by Ms. Kokko:  "Mr. Ku was a stronger candidate than Mr.

Valdivia.  His references were markedly better, he had advanced relevant education and

coursework, and his work history demonstrated success in a similar field."  Dkt. 28, ¶8.  *See also*

Dkt. 30, Exs. E-F (Plaintiff was rated "7/7/8" by his supervisor, "8/8/10" by one co-worker, and

"7/8/9" by another co-worker, while Mr. Ku was rated "10" in all three categories by all three

references); Dkt. 30, Ex. H at 1-3 (listing Mr. Ku's classes in individual, family, and marriage

counseling, small groups, and leadership, and vocational degree as a Chemical Dependency

Professional (which required 30 hours of coursework in treatment methods, developmental

psychology, individual and group counseling, relapse prevention, and psychopathology) and his

"11 years of experience working with at-risk youth with offenses that include sexual assault.";

stating Plaintiff "did not list any classes in mental health, counseling, human development,

clinical skills, etc."); *accord* Dkt. 27, Ex. A at 104:22-105:15.  These legitimate, non-retaliatory

reasons dispense with Defendant's burden.  *See, e.g., Fernandez v. Wynn Oil Co.*, 653 F.2d 1273,

1275 (9th Cir. 1981) (employer's decision to promote individual with superior qualifications is

legitimate and nondiscriminatory reason for denying promotion).

    4.   Pretext:

Because Defendant offers legitimate, non-retaliatory reasons for Plaintiff's non-selection,

Plaintiff must demonstrate those reasons are merely a pretext masking retaliation.  Plaintiff can

meet this burden "by either directly persuading the court that a discriminatory reason more likely

motivated the employer or indirectly by showing that the employer's proffered explanation is

unworthy of credence."  *Aragon v. Republic Silver State Disposal, Ind.*, 292 F.3d 654, 658-59

(9th Cir. 2002) (quoted sources omitted).  Where the evidence relied upon in making this

showing is circumstantial, not direct, it "must be both *specific and substantial* to overcome"

1    Defendant's legitimate reasons and survive summary judgment.  *Id.* (citations omitted; emphasis

2    retained).  Absent evidence of pretext, summary judgment is appropriate.  *Curley v. City of N.*

3    *Las Vegas*, 772 F.3d 629, 633-34 (9th Cir. 2014).

4         Plaintiff asserts his alleged lack of sufficient education and the reference checks were

5    used as pretext for the decision to hire Mr. Ku.  He maintains this question is best left to the jury.

6    The Court disagrees.

7         There is no direct evidence of retaliation.  The evidence shows Ms. Harris, the individual

8    ultimately responsible for the appointment, overrode the educational requirements listed for the

9    position and allowed Plaintiff to proceed with the application process; that Plaintiff performed

10   well and scored higher than Mr. Ku in the interview; that Ms. Kokko secured references for both

11   candidates; and that Ms. Harris approved of Mr. Ku's selection based on his superior references

12   and relevant education and coursework.  As Defendant observes, this evidence reflects that Mr.

13   Ku was selected as a result of a process, rather than Plaintiff's retaliatory non-selection.

14        Nor is there specific and substantial circumstantial evidence allowing for a conclusion the

15   explanation for Plaintiff's non-selection is unworthy of credence.  While initially denied an

16   interview, Ms. Harris promptly intervened and Plaintiff received one of the two highest average

17   interview scores.  Dkt. 28, ¶ 6 (56.3 for Plaintiff and 53 for Mr. Ku).  He, in fact, received the

18   highest score even though the panel included an individual with whom he had a past conflict

19   (Mr. Hartz).  *Id.*  In any event, both Ms. Harris and Ms. Kokko attested to the importance placed

20   on the reference checks.  Dkt. 27, Ex. C at 26:2-14 (Ms. Harris testified reference checks were

21   more important than interview scores because they provided "people's observations and

22   evaluation" of an applicant's work); Dkt. 28, ¶ 7 ("The reference checks are one of the most

23   important factors in the hiring decision.")  In contrast to Plaintiff, Mr. Ku's references included

24

both perfect scores and uniformly generous praise for his work performance and abilities.

*Compare* Dkt. 30, Ex. F, *with id*. Ex. E at 3-4 (plaintiff's supervisor stated he at times "may

become overwhelmed when multiple task[s] need attention at the same time" and did not always

submit his paperwork in a timely manner; she recommended he work on time management,

challenging himself to learn new skills, and "being more confrontational at times with his

clients.")  Ms. Kokko also followed up with Plaintiff's supervisor, Dkt. 28, ¶7, who advised he

may struggle with the autonomy of working independently, Dkt. 27, Ex. A at 120:13-18.

The evidence further shows Mr. Ku possessed relevant education, coursework, and work

experience for the job, while Plaintiff failed to identify relevant coursework.  *See supra* at 21

(describing Dkt. 30, Ex. H at 1-3).  The consideration of the coursework is, moreover, consistent

with the initial denial of an interview based on the qualifying criteria for the job.  Dkt. 27, Ex. B

at 16:8-15 and Ex. C at 16:3-9; Dkt. 30, Ex. D at 5.

Plaintiff's arguments in opposition are not persuasive.  He deems the reference forms

"inherently discriminatory" in asking what an applicant's "critics" would say and whether the

reference is "aware of any corrective or disciplinary action, including sexual harassment[.]"  Dkt.

30, Exs. E-F.  However, the questions were included on DOC forms provided to references for

both Plaintiff and Mr. Ku and do not directly or indirectly support his claim of retaliation.

Plaintiff also contends the fact that Ms. Kokko phoned only one of his references reflects

"unequal application of the hiring process" and her bias towards him, Dkt. 29, without showing

or even suggesting she contacted any of Mr. Ku's references.

Plaintiff also alleges prior incidents in which a female employee was selected over a male

employee and Ms. Kokko rehired a female employee who had been consistently behind in

paperwork without corrective action.  He does not provide factual or evidentiary support for

these unrelated allegations and there is no basis for their consideration in this matter.  *See generally Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) ("Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge.") (citation omitted).  Nor does the Court find Plaintiff's omission from the hiring announcement email to show the proffered explanation for his non-selection is unworthy of credence.

Plaintiff, finally, contends he should have been selected based on his higher interview score, status as an internal candidate, and experience working with adult convicted sex offenders. He does not refute the evidence of Mr. Ku's markedly more favorable references and relevant coursework and work experience, or show why the reliance on these factors over those preferred by Plaintiff demonstrate pretext.  "Merely denying the credibility of the employer's proffered reasons is insufficient to withstand summary judgment."  *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010) (citation omitted).  Further, the question is not whether Plaintiff "'in the abstract had better qualifications'" than Mr. Ku; the question is whether Mr. Ku is "'more qualified with respect to the criteria [the DOC] actually employs.'"  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000) (quoting *Cotton v. City of Alameda*, 812 F.2d 1245, 1249 (9th Cir. 1987)).  Plaintiff's "belief that he was more qualified for the position than [Mr. Ku] does not raise an issue of fact regarding retaliation."  *Testerman v. Somerton Elementary Sch. Dist.*, C07-0079, 2008 WL 5082164, at *4 (D. Ariz. Nov. 26, 2008) (citation omitted); *see also Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (plaintiff's "subjective personal judgments of her competence alone do not raise a genuine issue of material fact.")

1   Plaintiff does not, in sum, demonstrate retaliation more likely motivated his non-

2   selection.  Given Plaintiff's failure to establish pretext, Defendant is entitled to summary

3   judgment and to dismissal of Plaintiff's claim.

4                                              CONCLUSION

5   The Court concludes Defendant's Motion to Strike, Dkt. 33, should be GRANTED in

6   part and DENIED in part, and Defendant's Motion for Summary judgment, Dkt. 26, should be

7   GRANTED.  Because Defendant is entitled to dismissal of Plaintiff's retaliation claim on

8   summary judgment, this matter should be DISMISSED with prejudice.

9                                              OBJECTIONS

10  Objections to this Report and Recommendation, if any, should be filed with the Clerk and

11  served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

12  Recommendation is signed.  Failure to file objections within the specified time may affect your

13  right to appeal.  Objections should be noted for consideration on the District Judge's motions

14  calendar for the third Friday after they are filed.  Responses to objections may be filed within

15  **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be

16  ready for consideration by the District Judge on **November 5, 2021**.

17  Dated this 15th day of October, 2021.

18

19  S. KATE VAUGHAN
    United States Magistrate Judge

20

21

22

23

24

REPORT AND RECOMMENDATION - 25